**Carmen Rosa Josefa GOMEZ SANCHEZ VDA DE GONZALES**

v.

**NAVIERO NEPTUNO S.A. and El Kollao.**

**Civ. A. No. B–84–371 CA.**

United States District Court, E.D. Texas, Beaumont Division.

Jan. 30, 1986.

Gilbert I. Low, John W. Newton, Orgain, Bell & Tucker, Beaumont, Tex., Richard L. Tate, Young, Cook & Hampton, Houston, Tex., for plaintiff.

Kent M. Adams, Brown & Adams, Beaumont, Tex., Derek A. Walker, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants.

## MEMORANDUM STATEMENT

JOE J. FISHER, District Judge.

Plaintiff brings this combined action under the general maritime doctrine of unseaworthiness and the cause of action for wrongful death thereunder created by the Supreme Court of the United States in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Plaintiff also brings this action under the provisions of 46 U.S.C.A. § 688 (West Supp.1984), commonly known as the Jones Act, as the personal representative of the Estate of her deceased son, Fernando, a seaman, and the Court finds that Plaintiff is the appropriate beneficiary of that cause of action, pursuant to the terms of 45 U.S.C.A. § 51 et seq. (West 1982), commonly known as the Federal Employers Liability Act, from which the rights and remedies afforded by the Jones Act are drawn.

Plaintiff's Complaint was originally filed with this Court on March 15, 1984. There were numerous jurisdictional challenges filed by the Defendants including a Rule 12 Motion to Dismiss, a Motion for Certification for Interlocutory Appeal of this Court's denial of the Rule 12 Motion, an Application for Writ of Mandamus mandating this Court to certify its denial of the jurisdictional motion for appeal filed with the Fifth Circuit, and a Motion for Reconsideration of the Fifth Circuit's denial of the Application for Writ of Mandamus. The jurisdictional motions have been adequately briefed and decided by this Court on prior occasions.

The Court also finds additional facts in support of jurisdiction in the deposition of Mr. Luis Gamarra, fleet manager for Defendant, Naviero Neptuno, during which Mr. Gamarra testified that the Defendant now owns two vessels, the Kero and Kipu. Since January 1, 1985, the Kero has made four voyages to the United States. During those voyages, the Kero made calls on the Ports of Houston, New Orleans and Miami. Since January 1, 1985, the Kipu has also made four voyages to the United States and made stops at the same ports of call.

Mr. Gamarra further testified by deposition that during the year 1985, the Kero has made four round-trip voyages from its home port in Peru. On every one of those round-trip voyages, the Kero has visited a United States Port. Mr. Gamarra testified that every round-trip voyage made by the Kipu during the year 1985 involved a trip to a United States Port. Also, Mr. Gamarra's deposition contained testimony that during the year 1984, the Kero and the Kipu made several round-trip voyages from its home port of Peru to the United States.

■ The Court further finds, in addition to the overwhelming evidence presented earlier regarding the substantial base of business operations in and out of United States Ports, the testimony of Mr. Gamarra lends further support to this Court's proper exercise of jurisdiction in this case under the decision in *Fisher v. Agios Nicolaos*, 628 F.2d 308 (5th Cir.1980) (affirming district court's finding that the vessel had a substantial base of operations in United States), *cert. denied*, 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981). *See also Valmas Brothers Shipping, S.A. v. Fisher*, 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84, *reh. den.*, 454 U.S. 1129, 102 S.Ct. 982, 71 L.Ed.2d 117.

The Court also finds, as shown in both the live testimony presented to this Court and the deposition testimony of the Plaintiff and her daughter, that Plaintiff is the sole surviving parent of the deceased seaman, Fernando Gomez Sanchez. It is not contested that Fernando was a seaman and in the service of the vessel, El Kollo, employed by Naviero Neptuno, S.A. on the date of the accident. It is also uncontested that the vessel was in territorial waters. Fernando was 26 years old at the time of his death, unmarried, had no children, and maintained his permanent residence with his Mother. Defendants have insinuated in their argument before this Court that the decedent has a child that was conceived out of wedlock and born posthumously to a young lady the decedent dated prior to his death, but has offered no admissible evidence in support of such argument.

■ It is unquestionable that in the case where an unmarried seaman is survived by a parent or parents, the parents may maintain an action under general maritime law against the owner of the vessel for the wrongful death of a son, caused by the unseaworthiness of the vessel. *Moragne v. States Marine Lines, Inc., supra; Sistrunk v. Circle Bar Drilling Co.,* 770 F.2d 455 (1985); *Complaint of Metcalf,* 530 F.Supp. 446, 459–61 (S.D.Tex.1981); *Palmer v. Ribax, Inc.,* 407 F.Supp. 974, 979 (M.D.Fla.1976). This action is one that is personal to the parent to be brought by the parent and not the personal representative of the estate.

■ Likewise, under the Jones Act, and its prototype, the Federal Employers Liability Act, an action may be maintained by the personal representative of the deceased seaman for the deceased seaman's parents where there is no surviving widow and/or children. The Plaintiff being the sole surviving heir is the appropriate personal representative of the estate of her son.

During the trial and also during a period allowed by the Court following the trial, both Plaintiff and Defendants have made numerous objections as reflected by the record, and the Court in this Memorandum Statement overrules all objections made by both parties to which a ruling has not heretofore been made.

## FINDINGS OF FACT

1.

Decedent, Fernando Gonzales Gomez Sanchez, was killed in a fall aboard the El Kollao on April 23, 1982, in the port of Port Arthur, Texas. On that date, decedent was a seaman aboard the El Kollao and employed by Naviero Neptuno, S.A.

2.

On the above date, the El Kollao was docked in Port Arthur, Texas, for the purpose of unloading its cargo, raw fish meal.

3.

On the date of his death, decedent was unmarried and had never been married.

On the date of his death, decedent had no children.

4.

Plaintiff is the appropriate personal representative of the estate of decedent and authorized to bring this action under the Jones Act and General Maritime Law. Plaintiff is the sole beneficiary of the wrongful death actions provided by the Jones Act and General Maritime Law.

5.

The vessel El Kollao had a substantial base of operations in the United States while operated by Naviero Neptuno, and had a substantial base of operations in the United States between 1981 and the present. Between 1981 and the present, all of Naviero Neptuno's vessels have engaged in regular voyages to and from the United States.

6.

On April 23, 1982, decedent, while carrying out his duties, fell to his death aboard the El Kollao. After attaching the forward left side of the second pontoon hatchcover of the third row, decedent stepped on a loose, unsupported plank in the middle of the third row and fell to the bottom of the hold.

7.

The third row of hatchcovers had become loose due to the displacement of support beam no. 4 by the stevedores during the process of unloading the cargo of fish meal from hold no. 3. Thus, a dangerous condition in the work area was created on the hatchcovers of hold no. 3.

8.

The crew of the El Kollao undertook, pursuant to the orders of the boatswain, to remove the third row of hatchcovers from port to starboard rather than from the middle of the row to the side as is standard practice in the maritime industry. Thus, the boatswain of the El Kollao failed to devise a specific plan for removing the hatchcovers in response to the dangerous condition.

**9.**

The El Kollao and its owner, Naviero Neptuno, failed to provide either safety harnesses, safety belts or lifelines aboard the vessel for use by its crewmen working in areas where they might fall.

**10.**

It was foreseeable to a boatswain and/or captain of ordinary training and experience in the maritime industry that a seaman could fall and suffer serious injury or death under the grave and dangerous conditions which had arisen aboard the El Kollao.

**11.**

At the time of his death, Fernando was 26 years of age and his Mother, the Plaintiff, was 63. Fernando maintained his permanent residence with his Mother, the Plaintiff.

**12.**

Fernando had been a good student in school; had always displayed ambition and willingness to work by working in the summers and part-time during school as well as occasionally holding down two jobs following his Father's illness. Following his graduation from high school, Fernando always maintained employment.

**13.**

Following the illness of his Father in late 1979, Fernando took over the operation of the family business, a parking lot, in Lima, and operated the family parking lot from late 1979 until approximately August, 1981, which was the primary source of support for Plaintiff. Fernando, so to speak, stepped into the shoes of his Father providing his Mother both income from the family business and emotional support.

**14.**

While operating the family business between 1979 and August, 1981, Fernando also made a few voyages to sea for his previous employer, Naverio Humboldt, during which he arranged for the operation of the parking lot by a trusted employee. From the wages he earned while at sea for Naviero Humboldt, decedent contributed money to his Mother in the approximate

amount of Two Hundred and no/100 Dollars ($200.00) per month.

**15.**

Following the onset of her husband's illness in 1979 and prior to the death of Fernando, Plaintiff received almost all of her income from either Fernando's activities of running the parking lot or working as a seaman.

**16.**

The Court further finds that the decedent, Fernando Gonzales Gomez Sanchez, failed to keep a proper lookout for his own safety in stepping onto the hatchboards and thus recklessly disregarded his personal safety and was contributorily negligent.

## CONCLUSIONS OF LAW

**I.**

This Court has jurisdiction of the subject matter and the parties. The appropriate law forming the basis of decision in this case is the Jones Act and General Maritime Law as administered by American Courts.

**II.**

Plaintiff is the appropriate personal representative of the decedent, Fernando Gonzales Gomez Sanchez, and thus has standing to bring this action.

**III.**

At the time of his death on April 23, 1982, the decedent was a seaman in the service of the vessel El Kollao. At the time of his death on April 23, 1982, decedent was an employee of Defendant, Naviero Neptuno, S.A.

**IV.**

On April 23, 1982, the El Kollao was unseaworthy as a result of:

a) the displacement of beam number 4 above hold no. 3;

b) the absence of safety harnesses or lifelines for use by seamen working in areas where there was a risk of falling more than 2 meters; and

c) the absence of modern technology in the form of MacGregor hatchcovers which would have prevented the accident in which decedent was killed.

The unseaworthiness of the El Kollao on April 23, 1982, was a proximate cause of the decedent's injuries and death.

## V.

■ On April 23, 1982, the crew of the El Kollao was negligent:

a) in failing to remove the third row of hatchcovers from the center outward in accord with usual practice in the maritime industry;

b) in failing to devise a method for removing the third row of hatchcovers from the rear so as to avoid having to step atop the loose third row;

c) in failing to attach safety harnesses or lifelines to crewmen having to work in the vicinity of the loose hatchcovers.

Which negligence of the crew in the foregoing conclusions played at least a part and contributed to the injuries and death of deceased.

Further, on April 23, 1982, Defendants (including the El Kollao and Naviero Neptuno) failed to provide Plaintiff a reasonably safe place in which to work, which negligence played at least a part or contributed to the injuries and death of the deceased.

## VI.

Plaintiff's life expectancy based on her family history is conservatively estimated to be 10 years.

Plaintiff has suffered loss of support between the time of decedent's death and the present, and will reasonably suffer loss of support in the future, in the total amount of $25,000.00.

Plaintiff has suffered loss of services between the date of deceased's death and the present, and will reasonably suffer loss of service in the future in the amount of $10,000.00.

Plaintiff has suffered loss of society, including love, affection, care, attention, companionship, comfort and protection, between the date of deceased's death and the present, and will reasonably suffer loss of society, including love, affection, care, attention, companionship, comfort and protection, in the future in the total amount of $125,000.00.

Deceased suffered conscious pain and mental anguish prior to his death in the amount of $10,000.00.

The total amount of damages being in the sum of $170,000.00.

The Court has discounted all the future damages above pursuant to the requirements of *Culver v. Slater Boat*, 722 F.2d 114 (5th Cir.1983), applying a below-market discount rate of one percent.

## VII.

■ The Court concludes that the deceased, Fernando Gonzales Gomez Sanchez, contributed to his death in failing to keep a proper lookout for his own safety, and such contributory negligence or fault is attributable in whole or in part to the death of the deceased, and the Court finds that such contributory negligence is in the amount of twenty-five (25%) percent, and thus the amount of damages awarded to the Plaintiff is reduced by twenty-five (25%) percent.

## VIII.

Plaintiff is not entitled to the recovery of pre-judgment interest but is entitled to interest on the total amount of damages awarded (less the 25% contributory negligence on the part of the deceased) from the date of this Memorandum Opinion and Findings of Fact and Conclusions of Law.

## FINAL JUDGMENT

The above matter having been tried by the Court, without a jury, and the Court being of the opinion that Plaintiff is entitled to recover her damages in the amount of One Hundred Twenty-Seven Thousand Five Hundred ($127,500.00) Dollars from

the Defendants, NAVIERO NEPTUNO S.A. and EL KOLLAO, in accordance with the Court's Memorandum Opinion, Findings of Fact, and Conclusions of Law filed in said cause,

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiff, CARMEN ROSA JOSEFA GOMEZ SANCHEZ VDA DE GONZALES, recover from Defendant, NAVIERO NEPTUNO S.A. and EL KOLLAO, the amount of One Hundred Twenty-Seven Thousand Five Hundred ($127,500.00) Dollars, plus interest at the rate of ten (10%) percent per annum from date hereof, together with costs of Court.