Joan Robienczak **TRUEHART**, Wife of/and Donald Truehart

v.

Peter C. **BLANDON**, J. Robert Lee, III, the M/V **BUCCANEER**, Her Engines, etc., In Rem, United States Fidelity and Guaranty Company and ABC Insurance Companies.

Consolidated with

**UNITED STATES FIDELITY & GUARANTY COMPANY**

v.

Michael S. **WILLIAMS**, J. Robert Lee and the North River Insurance Company.

Civ. A. Nos. 87–0708, 87–0796.

United States District Court, E.D. Louisiana.

Oct. 13, 1987.

As Amended Oct. 23, 1987.

**930**

Chaffe, McCall, Phillips, Toler & Sarpy, John H. Clegg, L. Havard Scott, III, T.A., New Orleans, La., for Trueharts.

Bienvenu, Foster, Ryan & O'Bannon, Hugh M. Glenn, Jr., T.A., Franklin H. Jones, III, New Orleans, La., for J. Robert Lee, III, North River Ins. and U.S. Fire Ins. Co.

Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, Ashton R. O'Dwyer, Jr., New Orleans, La., for Peter C. Blandon and U.S. Fidelity & Guar. Co.

John D. Rawls, New Orleans, La., for Michael Williams.

## AMENDING AND SUPERSEDING ORDER & REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on defendants' motions to dismiss and/or for summary judgment. By Minute Entry dated September 17, 1987, the Court disposed of all issues but one raised in these motions. The Court now disposes of the final issue. For the following reasons, the Court GRANTS defendants' motions to dismiss plaintiff's claim for loss of society and CERTIFIES this order under 28 U.S.C. § 1292(b).

The present episode adds yet another chapter to admiralty's long and twisted history on wrongful death. To date, apparently no other court has ruled whether surviving, nondependent parents or siblings may recover for loss of society of their deceased child/sibling who had no surviving spouse or issue, who had not been living with his parents or siblings at the time of his death and who died on a state's territorial, navigable waters. Today, this Court rules they may not.

### I.

On February 23, 1986, Peter Blandon and several of his friends spent the day on Lake Pontchartrain aboard his Hatteras yacht. On the way home, Mr. Blandon turned the helm over to Robert Lee while Mr. Blandon went below deck. Soon thereafter, the boat struck the Lake Pontchartrain Causeway Bridge and sank. Victor Truehart, who had been up top on the yacht, died from the accident.

Victor's father, Donald Truehart, has sued the yacht *in rem* as well as Mr. Blandon, his insurer (United States Fidelity and Guaranty Company), Mr. Lee and his insurers (The North River Insurance Company and United States Fire Insurance Company). Plaintiff is suing on behalf of Victor's estate and Victor's immediate family (namely, plaintiff, his wife and their two other, surviving children)[1] and alleges that Mr. Blandon and/or Mr. Lee were negli-

---

1. The suit was originally brought by "Joan Robienczak Truehart, wife of/and Donald Truehart." Since the filing of the present motions, the Trueharts have amended the complaint to substitute for plaintiff "Donald Truehart, Personal Representative as duly appointed Administrator of the Estate of Victor Truehart, on behalf of Victor A. Truehart, and his heirs, Donald Truehart, Joan Robienczak Truehart, Terri A. Truehart and Thomas J. Truehart." Joan is Victor's mother; Terri, his sister; and Thomas, his brother.

gent in Victor's wrongful death. Among the claims sought is one for loss of society.

At the time of his death, Victor was a twenty-four year old New Orleans resident who had no surviving wife or child. For several years, he had not lived with his parents, who live in Massachusetts.[2] He had never contributed to their financial support.[3]

## II.

### A.

A tort claim comes within the admiralty jurisdiction of federal courts, among other times, when the alleged wrong occurs on navigable waters within the United States and bears a significant relationship to a traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972); *see East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, ——, 106 S.Ct. 2295, 2298, 90 L.Ed.2d 865 (1986). The "maritime nexus" requirement, or the "plus" element of the "locality-plus" test, is not restricted to commercial activity: it applies as well to pleasure boat activity, such as where two pleasure boats collide. *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 674–76, 102 S.Ct. 2654, 2658–59, 73 L.Ed.2d 300 (1982). Nor is it restricted simply to collisions between boats; admiralty jurisdiction exists, for the same general reasons, where a pleasure boat strikes a stationary object in the water. *See McCormick v. United States,* 680 F.2d 345, 347–48 (5th Cir.1982) (action against United States where a pleasure boat struck an unmarked piling); *Herbert v. Outboard*

*Marine Corp.,* 638 F.Supp. 1166, 1170 (E.D.La.1986) (Carr, J.) (action against a motor manufacturer where a homemade skiff struck a log piling); *cf. Foremost Insurance,* 457 U.S. at 676, 102 S.Ct. at 2659 ("the smooth flow of maritime commerce is promoted when all vessel operators are subject to the same duties and liabilities").

Further, courts have long held that an action arising from a passenger's injury aboard a boat on navigable waters comes within admiralty jurisdiction. *E.g., Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550 (1959); *cf. Gele v. Chevron Oil Co.,* 574 F.2d 243, 249–50 (5th Cir.1978) (not finding expressly that admiralty jurisdiction existed in an action by a pleasure boat passenger against the owner and the operator, but holding under general maritime law that the operator was partially liable for the passenger's injuries).

### B.

With admiralty jurisdiction comes the application of substantive maritime law. *East River Steamship,* 476 U.S. at ——, 106 S.Ct. at 2299; *see Foremost Insurance,* 457 U.S. at 685, 102 S.Ct. at 2663 (Powell, J., dissenting). Absent a relevant federal statute, the general maritime law, as developed by the judiciary, applies. *East River Steamship,* 476 U.S. at ——, 106 S.Ct. at 2299.

### C.

In *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), Chief Justice

---

**2.** While plaintiff admits that Victor had not lived with his parents for a number of years, he disputes that Victor had "permanently departed from home." *Compare* Defendants' Statement of Uncontested Facts ("Defendants' Statement"), ¶¶ 5–6, *with* Plaintiff's Statement in Response to Statement of Undisputed Facts of Defendants ("Plaintiff's Statement"), ¶¶ 5–6. Plaintiff has offered no evidence or explanation for his dispute.

**3.** Because the amendment to the complaint described in note 1 was made after the present motions were filed, Defendants' Statement does not indicate whether Victor had been living

with either of his siblings or had ever contributed to the financial support of either of them. The amended complaint does not allege such, nor does Plaintiff's Statement or his memorandum in opposition to the present motions raise such as a contested issue, nor has plaintiff offered any evidence that such is true. Accordingly, the Court presumes that neither of Victor's siblings had been living with him or had ever been financially supported by him. *See Celotex Corp. v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); F.R.Civ.P. 56.

Waite announced the simple, but archaic rule that in the absence of an applicable statute, no action for wrongful death would lie under general maritime law. *Id.* at 212–14, 7 S.Ct. at 146–47. Thereafter, courts began to allow an action for maritime wrongful death if an applicable state statute permitted recovery for such. *E.g., Western Fuel Co. v. Garcia*, 257 U.S. 233, 242, 42 S.Ct. 89, 90, 66 L.Ed. 210 (1921); *The Hamilton*, 207 U.S. 398, 405–06, 28 S.Ct. 133, 135, 52 L.Ed. 264 (1907). But the action was subject to the substantive limitations imposed by the state statute. *The Tungus v. Skovgaard*, 358 U.S. 588, 592–93, 79 S.Ct. 503, 506–07, 3 L.Ed.2d 524 (1959).

Meanwhile, in 1920, Congress enacted the Death on the High Seas Act (DOHSA), ch. 111, §§ 1–8, 41 Stat. 537 (codified as amended at 46 U.S.C. §§ 761–768 (1982)), and the Jones Act, ch. 250, § 33, 41 Stat. 1007 (codified as amended at 46 U.S.C. § 688 (1982)). On the one hand, DOHSA repudiated *The Harrisburg* rule for wrongful maritime death *outside* state territorial waters by providing an exclusive statutory remedy of *pecuniary* damages for wrongful death more than three miles from shore. 46 U.S.C. §§ 761–762; *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, ——, 106 S.Ct. 2485, 2491, 2500, 91 L.Ed.2d 174 (1986). On the other hand, the Jones Act repudiated the rule for wrongful death of a *seaman* by providing a remedy against his employer. 46 U.S.C. § 688; *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 154–55, 85 S.Ct. 308, 312–13, 13 L.Ed.2d 199 (1964) (holding that the Jones Act remedy against a deceased seaman's employer precludes recovery under state wrongful death statutes). Unfortunately, this mixture of state and federal law amounted to statutory chaos. *See* G. Gilmore & C. Black, *The Law of Admiralty* § 6–29, at 359 (2d ed. 1975); *see also Sistrunk v. Circle Bar Drilling Co.*, 770 F.2d 455, 457 (5th Cir.) (enumerating the incongruities and terming them an "unfair and irrational system"), *rehearing en banc denied*, 775 F.2d 301 (5th Cir.1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986).

Subsequently, in 1970, the Supreme Court overruled *The Harrisburg*, disposed of the need to look to state law for possible recovery and held that a federal remedy for wrongful death existed under general maritime law. *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 409, 90 S.Ct. 1772, 1792, 26 L.Ed.2d 339 (1970) (reversing the dismissal of a widow's wrongful death claim based on unseaworthiness, where the applicable state statute did not recognize the claim). The Court expressly recognized that the exact parameters of this new cause of action could be defined only after further litigation. *Id.* at 408, 90 S.Ct. at 1792. But the Court consistently referred to the intended beneficiaries of the new cause of action as being *dependents* of the deceased. *E.g., id.* at 382, 90 S.Ct. at 1778 ("in the case of death, those closest to him [the decedent]—usually spouse and children—seek to recover for their total loss of one on whom they depended"); *id.* at 385, 90 S.Ct. at 1779 ("courts have recognized ... calculation of loss sustained by dependents or by the estate of the deceased").

In *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the Supreme Court addressed for the first time maritime wrongful death claims for loss of society. The Court held that the widow of a longshoreman killed on state territorial waters could recover damages on her (*Sieracki*) unseaworthiness claim for loss of support, services and society and for funeral expenses, even though her husband had recovered in his lifetime for his personal injuries. *Id.* at 583–91, 94 S.Ct. at 814–18; *cf. American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) (holding that the wife of a harbor worker nonfatally injured in state waters may sue for loss of society under general maritime law). The Court defined society broadly:

> The term "society" embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection.

*Gaudet,* 414 U.S. at 585, 94 S.Ct. at 815. But as it did in *Moragne,* the Court in *Gaudet* continued to refer to the beneficiaries of its decision as dependents. *E.g., id.* at 577, 94 S.Ct. at 811 ("the creation of a uniform federal cause of action for maritime death, designed to extend to the dependents of maritime wrongful death victims"); *id.* at 583, 94 S.Ct. at 814 ("the policy underlying the remedy is to insure compensation of the dependents [of the deceased]"); *id.* at 584, 94 S.Ct. at 814 ("it is necessary first to identify the particular harms suffered by the dependents"); *id.* at 585–86, 94 S.Ct. 815 ("the deprivation of these benefits [*i.e.,* loss of society] by wrongful death is a grave loss to the decedent's dependents").

A few years later, in *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), the Court held that the pecuniary loss standard provided in DOHSA controlled on the high seas and could not be supplemented by loss-of-society claims recognized in *Gaudet* for *Moragne* causes of action. *Id.* at 623–24, 98 S.Ct. at 2014; *see also Tallentire,* 477 U.S. 207, 106 S.Ct. 2485 (holding that DOHSA remedies may not be supplemented by state law remedies, through either OCSLA or § 7 of DOHSA). The Court acknowledged that the measure of damages in coastal waters would differ from that on the high seas, but added that admiralty's desire for uniformity, *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 215–16, 37 S.Ct. 524, 528–29, 61 L.Ed. 1058 (1917), could not override DOHSA's provisions, even if the difference in damages was great. *Higginbotham,* 436 U.S. at 624, 98 S.Ct. at 2014. In an accompanying footnote, the Court commented on such possible differences:

> It remains to be seen whether the difference between awarding loss-of-society damages under *Gaudet* and denying them under DOHSA has a great practical significance. It may be argued that the competing views on awards for loss of society ... can best be reconciled by allowing an award that is primarily symbolic, rather than a substantial portion of the survivors' recovery. We have not been asked to rule on the propriety of the large sums that the District Court would have awarded for loss of society in this case.

*Id.* at 624 n. 20, 98 S.Ct. at 2014 n. 20 (cross references omitted).

While these cases from *Moragne* to *Tallentire* speak in general terms about dependents, none directly addresses the question of what type of plaintiff is entitled to recover *Moragne* wrongful death damages, specifically, to recover loss-of-society damages. In each of these opinions, the plaintiffs were the decedents' widows. Other than *Higginbotham,* none indicates whether these widows were personal representatives on behalf of any other person. In *Higginbotham,* it appears that the widows were also suing on behalf of their minor and adult children. *Id.* at 619 n. 4, 98 S.Ct. at 2012 n. 4 (not indicating whether any of the claimants had been dependent on or lived with decedents). For cases addressing who may sue under *Moragne* and *Gaudet* for loss of society, this Court must turn to Fifth Circuit opinions.[4]

The most similar case to the instant case is *Sistrunk v. Circle Bar Drilling Co.,* 770

**4.** In his memorandum, plaintiff cites two district court opinions awarding parents loss-of-society damages for the maritime wrongful death of their unmarried sons. *See Complaint of Metcalf,* 530 F.Supp. 446, 459–61 (S.D.Tex.1981) (upon a finding of negligence by a fellow crew member and by the vessel manufacturer, awarding mother $10,000—about one-third of total recovery, including recovery for loss of future contributions—for her seaman son's death, where he had been an intermittent resident in his mother's home during the last several years of his life and had made intermittent gifts to his retired mother); *Palmer v. Ribax, Inc.,* 407 F.Supp. 974, 979 (M.D.Fla.1976) (awarding nondependent parents $2500 for loss of society

of their only, eighteen-year old son, who had always resided with his parents); *see also Gomez Sanchez Vda de Gonzales v. Naviero Neptuno S.A.,* 641 F.Supp. 75, 77–78 (E.D.Tex.1986) (awarding damages for, among other things, loss of society to dependent mother with whom the seaman decedent had been living). In all three cases, the decedents had been living with their parents. *Metcalf* does not discuss the Jones Act even though the decedent appears to have been a seaman; when the Jones Act is considered, *Metcalf* appears to conflict with *Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524 (5th Cir.1979) (en banc) (holding that seaman's father may not recover loss-of-society damages for the wrongful death of his Jones Act seaman son

F.2d 455. There, three crew members of a drilling vessel drowned when the vessel capsized on Louisiana waters. *Id.* at 456. The widows of the three sued for wrongful death under the Jones Act for negligence and under general maritime law for unseaworthiness. *Id.* The parents joined in these actions to recover damages for loss of their sons' society; none of the parents was financially dependent on his son at the time of the casualty. *Id.* The Fifth Circuit reversed the district court's judgment awarding the parents damages under general maritime law for loss of society. *Id.* The Fifth Circuit noted that "denial of recovery lends more uniformity to admiralty jurisdiction than allowing recovery," specifically, with relation to the Jones Act and DOHSA. *Id.* at 459. It then described how its holding illustrated the hypothesis in *Higginbotham* that the denial of loss-of-society claims for death on the high seas and the granting of such in territorial waters should not prove a significant threat to uniformity: as noted above, *supra* p. 933, the Supreme Court in *Gaudet* was assuming that a loss-of-society claim would be a symbolic, nonsubstantial portion of the survivors' recovery. *Id.* at 459 (citing *Higginbotham*, 436 U.S. at 624 n. 20, 98 S.Ct. at 2014 n. 20). In short, the court found that a threat to uniformity could be material only where claims for loss of society were the sole, or the vast portion of the, wrongful death claims sought. In addressing the aim of maritime law at providing special solicitude to seamen, the court noted that this aim extended to the depend-

ents of wrongful death victims, but specifically pointed out that the parents in *Sistrunk* were not dependent on their sons. *Id.* at 460.

In *In re Patton–Tully Transportation Co.*, 797 F.2d 206 (5th Cir.1986), an action arising from the capsize of a work skiff on the Mississippi, the Fifth Circuit referred to *Sistrunk*. There, the decedent's mother, on behalf of herself and her two other, surviving children, filed a Jones Act claim and a general maritime unseaworthiness claim for the wrongful death of her eighteen-year old son, who drowned from the capsize. The district court awarded total damages of over $300,000, of which $40,000 was for the mother's loss of society and $40,000 was for the brother's and sister's combined loss of society. *Id.* at 209 & n. 1. Affirming the award, the Fifth Circuit held that the Jones Act, which applied in the case, did not exclude recovery for the general maritime claim and that the decedent's siblings, who unlike their mother were precluded from recovering under the Jones Act, 46 U.S.C. § 688 (incorporating 45 U.S. C. § 51 (1982) (denying recovery to an inferior class of beneficiaries [dependent siblings] where a preferred class [parents] exists)), were entitled to the award for loss of society under the general maritime claim. *Id.* at 212–13. In finding that all three survivors were entitled to recovery, the Court emphasized that all three were financially dependent on the decedent. *Id.* at 213.[5]

■ The court characterized its holding in *Sistrunk* as follows: "this court has

---

who met death in territorial waters as a result of negligence for which his employer was liable), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). *Palmer*, 407 F.Supp. at 979, misreads certain dictum in *Law v. Sea Drilling Corp.*, 523 F.2d 793 (5th Cir.1975), *denying petition for rehearing from* 510 F.2d 242 (5th Cir.1975). In *Law*, Judge Brown wrote: "wrongful death recovery compensates the decedent's dependents and other survivors," but then added: "The loss [of society]—and the damages —belongs to the dependents not to the decedent." *Id.* at 795. *Palmer* erroneously implies that nonpecuniary damages are the only damages available in a maritime wrongful death action; even if not entitled to loss-of-society damages, nondependent survivors may still maintain wrongful death actions for pecuniary

damages such as funeral expenses and, perhaps, loss of services. On *Law*, see note 5.

This Court notes that none of these district court opinions is binding on this Court and adds that none addresses in detail the issue before this Court.

5. The court cited two earlier Fifth Circuit opinions where the court, in its words, "allowed awards in one action to spouses and their dependent and non-dependent children." *Id.* at 213 (citing *Skidmore v. Grueninger*, 506 F.2d 716, 729 n. 11 (5th Cir.1975) and *Law v. Sea Drilling Corp.*, 510 F.2d 242, 249–50 (5th Cir.), *reh'g denied*, 523 F.2d 793 (5th Cir.1975)). This dictum is not wholly accurate. In *Law*, there was no suggestion that the children were nondependents: the decedent rig worker's widow was

held since *Gaudet* that non-dependent parents of wrongful death victims may not recover damages for loss of society." *Id.* The court found it unnecessary to mention that the decedent in *Sistrunk* was also survived by a spouse and child. Indeed, when the holding in *Patton–Tully* (a survivor may sue under general maritime law even though he is barred from suing under the Jones Act because a preferred beneficiary exists) is read together with the holding in *Sistrunk* this Court is bound to conclude that the holding in *Sistrunk* depends not on whether a decedent has a surviving spouse or child, but on whether the plaintiff was dependent on the decedent; in other words, nondependent parents may not recover loss-of-society damages under general maritime law for the wrongful death of their seaman son. *See also Toups v. Du–Mar Marine Contractors, Inc.,* 644 F.Supp. 475, 477–78 (E.D.La. 1985) (Collins, J.) (extending *Sistrunk* in a nonfatal injury case to deny recovery under general maritime law for loss of society to nondependent parents where their seaman son had no wife or child).[6]

### III.

### A.

■ The accident in this action occurred on Lake Pontchartrain, which is a naviga-

ble water within the territorial limits of Louisiana. *See United States v. Lamastus & Associates, Inc.,* 785 F.2d 1349, 1353 & n. 7 (5th Cir.1986) (per curiam). Plaintiff alleges that defendants were negligent in the operation and navigation of the boat; whether for pleasure or for commercial use, the operation and navigation of boats bear a significant relationship to a traditional maritime activity. *Foremost Insurance,* 457 U.S. at 675–76, 102 S.Ct. at 2658–59. In short, as all parties admit, this action satisfies the "locality-plus" test of *Executive Jet* and thus comes within the Court's admiralty jurisdiction under 28 U.S. C. § 1333(1).

### B.

■ DOHSA does not apply to deaths occurring, as here, in territorial waters. 46 U.S.C. § 761; *Sistrunk,* 770 F.2d at 456. The Jones Act does not apply to deaths, as here, of nonseamen. 46 U.S.C. § 688. Finally, the Louisiana Wrongful Death Statute, La.Civ.Code art. 2315 (West 1987), is supplanted in maritime wrongful deaths by the general maritime *Moragne* cause of action. *In re S/S Helena,* 529 F.2d 744, 753 (5th Cir.1976); *Sistrunk,* 770 F.2d at 456–57. Because no relevant federal stat-

suing on behalf of herself and her three *minor* children whom the court inferred, in its discussion on loss of nurture, guidance and control during minority, were dependent on the deceased father. *Law,* 510 F.2d at 246, 249 n. 19, 250–51. Further, the holding in *Law* on the award of nonpecuniary damages has been overruled by *Higginbotham* and *Tallentire.* In *Skidmore,* the court reversed the denial of loss of society to, among other persons, the decedent passenger's adult daughter. *Skidmore,* 506 F.2d at 729 & n. 11. By, among other things, noting that both the Jones Act and DOHSA prohibit loss-of-society damages for wrongful death, the panel in *Sistrunk* appears to have directly rejected the rationale in *Skidmore* for allowing recovery to the adult daughter in addition to the widower and his minor children. Further, while this daughter may, in fact, have been nondependent on her deceased mother, the opinion does not expressly indicate such.

**6.** Besides *Patton–Tully* and *Sistrunk,* only four Fifth Circuit cases that this Court has found have mentioned maritime loss-of-society claims brought by or on behalf of a decedent's parents or siblings; in each case, recovery for wrongful

death was denied. *See Casaceli v. Martech International, Inc.,* 774 F.2d 1322, 1331 (5th Cir. 1985) (not addressing a loss-of-society award for the decedent's mother where the defendants had breached no duty to the decedent); *Azzopardi v. Ocean Drilling & Exploration Co.,* 742 F.2d 890, 893–94 (5th Cir.1984) (distinguishing *Higginbotham* and nonpecuniary wrongful death claims to hold that DOHSA did not bar a decedent's father from bringing a survival action on behalf of the decedent's estate for the decedent's pain and suffering); *Kaiser v. Travelers Insurance Co.,* 487 F.2d 1300, 1301 (5th Cir. 1974) (per curiam) (holding that parents of a minor child may not sue under general maritime law for loss of society from the wrongful death of their child in a boating accident); *Hueschen v. Fluor Ocean Services,* 483 F.2d 1396, 1397 (5th Cir.1973) (per curiam) (denying loss-of-society award to parents in an unseaworthiness action for wrongful death of their son). The basis for *Kaiser* and *Hueschen,* that general maritime law never recognizes loss-of-society claims, has been rejected in *Gaudet.*

ute applies, the sole cause of action under which plaintiff may recover damages for loss of society is the general maritime *Moragne* cause of action for wrongful death. *Id.* at 456.

### C.

The question, then, is whether *Moragne* wrongful death damages, specifically, loss-of-society damages, may, on grounds of negligence [7] by defendants, be awarded to the surviving Trueharts, none of whom was financially dependent on or lived with the decedent. While bound by the Supreme Court and the Fifth Circuit, this Court is also guided by the twin aims of maritime law: achieving uniformity in the exercise of admiralty jurisdiction and providing special solicitude to seamen. *See Moragne,* 398 U.S. at 386–88, 90 S.Ct. at 1780–81; *Gaudet,* 414 U.S. at 577, 94 S.Ct. at 811. In answering the question in the negative, the Court makes the following five observations.

First, denying recovery lends more uniformity to admiralty jurisdiction than allowing recovery, for the Trueharts could not have recovered under the other maritime remedies. DOHSA limits recovery to pecuniary loss, 46 U.S.C. § 762; *Sistrunk,* 770 F.2d at 459, while the Jones Act precludes recovery for loss of society from wrongful death of a seaman in a Jones Act or general maritime negligence action against his employer. *Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524, 525–26 (5th Cir.1979) (en banc) (a wrongful death action brought by seaman's father), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980); *cf. Beltia v. Sidney Torres Marine Transport, Inc.,* 701 F.2d 491, 492–93 (5th Cir.1983) (denying recovery in a wife's action under both the Jones Act and general maritime negligence law for the nonfatal injury of her seaman husband, where the vessel was found seaworthy).

This rationale alone may be insufficient after *Gaudet,* which granted a cause of action to a longshoreman's widow for loss of society under her unseaworthiness claim. But in *Sistrunk,* the Fifth Circuit provided reconciliation between *Higginbotham* and *Gaudet. Sistrunk,* 770 F.2d at 459. As in *Sistrunk,* the Trueharts do not have claims for loss of future contribution, support or services from the decedent; indeed, their sole pecuniary damage claim is for the $3500 that the Trueharts spent for funeral expenses on the decedent, Defendants' Statement, ¶ 7—a trivial amount compared to the $500,000 prayed for in the complaint for loss of society. Guided by the Supreme Court's admonition in *Higginbotham* and the Fifth Circuit's application of that admonition, this Court believes that allowing the Trueharts to recover for loss of society poses a significant threat to uniformity.

Plaintiff suggests that this Court should adopt Louisiana wrongful death law, which permits nondependent parents to recover for loss of society for the wrongful death of their child, La.Civ.Code arts. 2315, 2315.2 (West 1987), as a model in shaping the general maritime wrongful death remedy under *Moragne.* He offers no reason for looking to Louisiana, as opposed to another state's, law for determining what the federal maritime, judge-created law is or should be—beyond, perhaps, the fact that the accident occurred in and the action was brought in Louisiana. Under this rationale, the federal maritime law would vary from district to district, from circuit to circuit, until the Supreme Court would be forced to choose the law of one particular state for all courts to follow. Had this accident occurred in, for example, Hawaii, New Jersey or Rhode Island, and suit been brought there, then a federal court following plaintiff's rationale would have to deny recovery. *See, e.g.,* Hawaii Rev.Stat. § 663–3 (1976) (nondependent parents cannot recover); N.J.Rev.Stat.Ann. § 2A:31–5 (West Supp.1985) (only pecuniary damages recoverable); R.I. Gen.Laws § 10–7–2 (Supp.1984) (parents can recover

---

7. Plaintiff's complaint also contained an unseaworthiness claim under general maritime law. Upon defendants' unopposed motion, the Court dismissed that claim. Minute Entry of September 17, 1987.

for loss of society only if deceased child is unemancipated minor). Further, the substantive limitations of the state statute, such as Louisiana's one-year limitation period for wrongful death actions, would often conflict with maritime law. *Compare* La. Civ.Code art. 2315.2(B) (one-year limitation period) *with* 46 U.S.C. § 763a (1982) (three-year limitation period for all maritime personal injury and wrongful death actions). In short, this rationale would wreak havoc on any uniformity and often create conflict with federal law.

Second, distinguishing other cases on the basis of their involving seamen and seaworthiness claims in order to allow recovery here would not foster admiralty's aim at providing special solicitude to seamen. General maritime law is its most generous to seamen, the wards of admiralty. This Court refuses to find such a distinction relevant in order to craft for nonseamen's survivors a remedy not available to seamen's survivors, to whom admiralty also provides special solicitude, *cf. Gaudet*, 414 U.S. at 577, 94 S.Ct. at 811; *Sistrunk*, 770 F.2d at 460.

Third, denying recovery follows the decided wisdom that only dependents should be permitted to recover for loss of society. Because courts have rarely discussed what may constitute dependency, a few comments are needed.

■ As the Supreme Court cases show, the vast majority of cases on loss of society from wrongful death concerns surviving spouses or surviving spouses and minor children. While only some of these cases expressly state that the surviving spouse and children were dependent on the deceased, such a statement is unnecessary because dependency there is presumed. The institution of marriage is built on the dependency of each spouse on the other and the corresponding obligation of each spouse to support the other. *See, e.g.*, La. Civ.Code art. 119. For the same reason, the universal obligation in this country for parents to support their unemancipated minor children, *see, e.g., id.* art. 227, dictates that these children be presumed dependent on their parents. Of course, this concep-

tion of dependency does not rely solely on *financial* support because, for example, gainfully employed spouses may be financially nondependent on each other; the law generally finds it unnecessary to ask whether one spouse depends on money from the other in order to bestow the legal benefits of marriage. An added element lies in the fact that these people live with each other.

With surviving parents, siblings and other relatives, no such presumption exists from the mere fact of the family relation. Where the law provides no obligation for support by the surviving relative to the deceased and by the deceased to the surviving relative, the law does not presume dependency of the one on the other merely because the two are in the same family. Only where the surviving relative and the deceased chose to live together could a court, perhaps, continue tacitly to presume dependency. This observation helps distinguish the three district court cases discussed above in note 4. Because the surviving Trueharts were not financially dependent on and did not live with the decedent, this Court does not have to decide whether, for example, parents or siblings who were not financially dependent on their deceased relative but who did live with that relative can seek loss-of-society damages under *Moragne*. Whatever conception of dependency this Court may adopt, it excludes the Trueharts' situation.

The broad definition of society the Supreme Court gave in *Gaudet* has no limitation about dependency. *See Gaudet*, 414 U.S. at 585, 94 S.Ct. at 815 ("... each family member ..."). But three points urge this Court not to rely overwhelmingly on this one sentence. First, decisions should not turn on the passing niceties of phrase in another. *E.g., Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399–400, 5 L.Ed. 257 (1821) (Marshall, C.J.). Second, the Supreme Court has expressly warned against reading *Gaudet* too broadly. *Higginbotham*, 436 U.S. at 622, 98 S.Ct. at 2013. Finally, the Fifth Circuit's decision in *Patton–Tully* turned on the finding that the surviving parent and siblings were fi-

nancially dependent on the decedent. *Patton–Tully,* 797 F.2d at 213.

Fourth, denying recovery here will not in all circumstances bar those who fatally injure boat passengers with no dependents from being sued and thus, in theory, from being deterred from their wrongful conduct. For inasmuch as persons may be deterred because of the possibility of an adverse judgment, defendants remain deterred by possible liability for the survival claim of a decedent's conscious pain and suffering. *Cf. Graham v. Milky Way Barge, Inc.,* 824 F.2d 376, 387 (5th Cir. 1987) (holding that DOHSA does not preclude a *survival* action for a seaman's death); *In re Merry Shipping, Inc,* 650 F.2d 622, 623 (5th Cir.1981) (holding that a seaman's survivors may sue on behalf of his estate for his pre-death pain and suffering).

Finally, this Court notes that somewhere a line must be drawn between those who may recover for loss of society and those who may not. The line suggested in Supreme Court and Fifth Circuit opinions, the line between dependents and nondependents, appears to be the most rational, efficient and fair. A requirement of dependency creates a finite, determinable class of beneficiaries. Further, the presumption of dependency for spouses and unemancipated minor children (and perhaps as well for other family members who live together) usually applies, making the requirement easy to show. And where such a presumption does not exist, proof of dependency, specifically, financial dependency, usually depends on objective matters such as tax returns or financial statements; experience has shown that allegations of dependency are rarely disputed.

Without this line, there would be no rationale for granting a cause of action to some surviving family members but denying it to others; aunts and uncles, nieces and nephews, and cousins all could claim loss of society. In that case, a whole new set of subjective variables would need case-by-case consideration, tending to protract litigation. In addition, a defendant would hardly ever know the full extent of his possible liability because he could not easily determine who potential plaintiffs may be. And the larger and harder to define the potential class, the greater are society's costs in protecting against claims for such loss: insurance costs rise as uncertainty increases. *See generally Gaudet,* 414 U.S. at 608, 94 S.Ct. at 826 (Powell, J., dissenting).

Of course, courts could arbitrarily adopt as general maritime law some other line to eliminate a potentially infinite class of distantly related heirs who may have had little to no contact with the decedent during his lifetime. If courts chose to look to state intestacy laws for this line, then the pre-*Moragne* uniformity problems would reemerge in a new context.

In conclusion, the Court finds that denying recovery for loss of society in this case promotes greater uniformity and efficiency in maritime law and follows the Supreme Court's and the Fifth Circuit's general assumption that a showing of dependency is required in order to recover under general maritime law for loss of society. Accordingly, defendants' motions to dismiss plaintiff's claims for loss of society are hereby granted.

## IV.

The Court is of the opinion that this Order and Reasons involves a controlling issue of law as to which there is a substantial ground for difference of opinion. Because plaintiff's loss-of-society claim constitutes the vast portion of the compensatory damages sought, the Court is of the further opinion that an immediate appeal may materially advance the ultimate termination of this litigation.

Accordingly, the Court hereby certifies this Order and Reasons for immediate appeal under 28 U.S.C. § 1292(b). An application for appeal hereunder shall operate to stay proceedings in this Court. The stay shall become effective upon the filing of a copy of the application for appeal in this Court.