Karen SISTRUNK, Individually and As Administratrix of the Estate of Michael Glenn Sistrunk, Plaintiff-Appellee,

v.

CIRCLE BAR DRILLING COMPANY, Defendant-Appellant.

Sonya SISTRUNK, Individually and As Administratrix of the Estate of David Brian Sistrunk, Plaintiff-Appellee,

v.

CIRCLE BAR DRILLING COMPANY, Defendant-Appellant.

Betty Mae RUTLAND, Individually and As Independent Executrix and Representative of the Estate of Clifford Rutland, Plaintiff-Appellee,

v.

CIRCLE BAR DRILLING COMPANY, Defendant-Appellant.

No. 84-3671.

United States Court of Appeals, Fifth Circuit.

Sept. 9, 1985.

Rehearing and Rehearing En Banc Denied Oct. 7, 1985.

**456**

Phelps, Dunbar, Marks, Claverie & Sims, Margot Mazeau, Michael H. Bagot, Jr., C. Theodore Alpaugh, III, New Orleans, La., for defendant-appellant.

Kierr, Gainsburg, Benjamin, Fallon & Lewis, Gerald E. Meunier, New Orleans, La., for Sistrunk, et al.

Before GOLDBERG, REAVLEY and GARWOOD, Circuit Judges.

REAVLEY, Circuit Judge:

The sole question presented in this appeal is whether parents of seamen can recover nonpecuniary damages in a cause of action under general maritime law for wrongful death where the seamen were killed in territorial waters and were survived by spouses and/or children. The district court held that the parents could recover. We reverse.

### I.

On August 8, 1980, Circle Bar Rig No. 8, a drilling vessel owned by Circle Bar Drilling Co., capsized in the territorial waters of the State of Louisiana. Among the crewmembers who drowned were the Sistrunk brothers, Michael Glenn and David Brian, and Clifford Rutland. Michael Sistrunk was survived by a widow, children, and his parents. David Sistrunk was survived by a widow and his parents. Clifford Rutland was survived by his widow, children, and mother.

The widows were appointed as the representatives of their deceased husbands' estates and filed wrongful death actions under the Jones Act, 46 U.S.C. § 688 (1982), for negligence and under general maritime law for unseaworthiness. The parents joined in these actions seeking nonpecuniary damages for the loss of their sons' society. None of the parents were financially dependent on their sons at the time of the casualty.

In denying Circle Bar's motion for summary judgment, the district court held that the parents had a cause of action for loss of society under *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Thereafter, all of the claims of the widows and children were settled. Judgment in favor of the parents was entered after Circle Bar and the parents stipulated that the vessel was unseaworthy and the quantum of damages.[1]

### II.

The sole cause of action under which the parents may recover is the general maritime law cause of action for wrongful death announced in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Other possible causes of action do not provide a remedy for the parents. The Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 761–768 (1982), does not apply to deaths occurring, as here, in territorial waters and limits recovery to pecuniary damages, 46 U.S.C. § 762 (1982). The Jones Act, 46 U.S.C. § 688 (1982), is not available, because parents can recover only when the seaman is not survived by a spouse or children, 45 U.S.C. § 51 (1982). Finally, the Louisiana wrongful death statute, La.Civ.Code Ann. art. 2315 (West Supp.1985), is supplanted in

---

1. The Sistrunks received a total of $240,000 for the loss of society of their sons. Rutland received $25,000 for the loss of society of her son.

maritime wrongful deaths by the general maritime cause of action for wrongful death created in *Moragne*. *Matter of S/S Helena*, 529 F.2d 744, 753 (5th Cir.1976).

Because the parents' remedy is exclusively under *Moragne*, we begin with a discussion of that case. In *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1866), the Supreme Court held that general maritime law did not provide a cause of action for wrongful death. As a result, there was no remedy for death on the high seas caused by the breach of a maritime duty. If the death occurred in territorial waters, federal law allowed the survivors to recover under the adjacent state's wrongful death statute. *Moragne*, 398 U.S. at 393, 90 S.Ct. at 1784, 26 L.Ed.2d at 352. In an effort to provide seamen with a greater range of remedies, Congress in 1920 enacted DOHSA, ch. 111, §§ 1–8, 41 Stat. 537 (codified as amended at 46 U.S.C. §§ 761–768 (1982)), and the Jones Act, ch. 250, § 33, 41 Stat. 1007 (codified as amended at 46 U.S.C. § 688 (1982)). DOHSA, 46 U.S.C. § 761 (1982), creates a maritime cause of action for wrongful death on the high seas, and the Jones Act, 46 U.S.C. § 688 (1982), provides a remedy at law against seamen's employers for seamen injured or killed through the negligence of the employer. In 1964, the Supreme Court held that survivors of seamen killed in territorial waters could sue the deceased seamen's employers only under the Jones Act, to the exclusion of state wrongful death statutes and claims based on unseaworthiness. *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).

By 1970, under this tripartite statutory scheme, the proper remedy was dependent on the conjuncture of numerous factors: whether the injury occurred on the high seas or in territorial waters; whether the injured person was a seaman; whether the person survived or died from his injury; and whether the adjacent state's wrongful death statute provided a remedy. If an injury on the high seas resulted in the death of any person, DOHSA, 46 U.S.C. §§ 761–762 (1982), provided that certain named survivors could bring an action in admiralty, with its accompanying bases of liability, to recover pecuniary losses. If an injury occurred in the territorial waters, recovery depended on who was injured. If a seaman were injured, recovery depended in turn on whether the seaman survived. If the seaman survived, he could sue his employer in a court of law for negligence under the Jones Act, 46 U.S.C. § 688 (1982), or in admiralty court for unseaworthiness, *see McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 222, 78 S.Ct. 1201, 1203, 2 L.Ed.2d 1272 (1958). If the seaman died from his injuries, the survivor's sole claim was for negligence under the Jones Act. *Gillespie*, 379 U.S. at 154–55, 85 S.Ct. at 312, 13 L.Ed.2d at 204. If a nonseaman were injured in a state's territorial water, he could recover for negligence. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). If he died from his injuries, the nonseaman's survivors could recover for negligence or unseaworthiness provided that the state wrongful death statute allowed recovery on such theories of liability. *The Tungus v. Skovgaard*, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959).

In *Moragne*, 398 U.S. at 395–96, 90 S.Ct. at 1785, 26 L.Ed.2d at 353–54, the Supreme Court noted the incongruities inherent in this tripartite scheme. First, within territorial waters, unseaworthiness, a violation of federal law, produced liability if the victim were merely injured but frequently not if he were killed. Second, identical breaches of the duty to provide a seaworthy vessel that result in death produced liability on the high seas but not in territorial waters adjacent to those states that did not recognize unseaworthiness claims. And finally, survivors of seamen had no recourse for deaths in territorial water caused by unseaworthiness while survivors of nonseamen had such a remedy when provided by state law.

In an effort to remedy this unfair and irrational system, the Court in *Moragne*, *id.* at 409, 90 S.Ct. at 1792, 26 L.Ed.2d at 361, held that an action lies under general

maritime law for death caused by unseaworthiness. The Court recognized that in creating a new cause of action not before recognized by general maritime law and not the product of a comprehensive statutory scheme numerous subsidiary issues could be resolved only after further litigation in the lower courts. *Id.* at 405–08, 90 S.Ct. at 1790–92, 26 L.Ed.2d at 359–61.

In *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the court was called upon to give further substance to the new cause of action created in *Moragne.* The Court held that in *Moragne* actions survivors were entitled to recover for loss of society, which "embrace[d] a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection." *Id.* at 585, 94 S.Ct. at 815, 39 L.Ed.2d at 21.

The last pronouncement in this area by the Supreme Court came in *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). In *Higginbotham,* 436 U.S. at 625, 98 S.Ct. at 2015, 56 L.Ed.2d at 587, the Court held that the exclusive remedy of survivors of persons killed on the high seas is under DOHSA with damages limited to pecuniary losses and, therefore, the survivors could not bring a *Moragne* cause of action for loss of society.

### III.

The question before this court now is whether the loss of society damages awarded in *Gaudet* may be recovered by parents where they are not dependent on the seamen, and where the seamen were killed in territorial waters and are survived by spouse and/or children.[2] To answer this question, we must be guided by the manner in which the Supreme Court created the cause of action and determined what damages were recoverable. Foremost in the Court's holding were the twin aims of maritime law: achieving uniformity in the exercise of admiralty jurisdiction and providing special solicitude to seamen. *See Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 386–88, 401, 403, 90 S.Ct. 1772, 1780–81, 1788–89, 26 L.Ed.2d 339 (1970); *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 577, 94 S.Ct. 806, 811, 39 L.Ed.2d 9 (1974).

Another principle that guided the Court was that, although it was creating a new cause of action, the Court would look to maritime law and general law, including state wrongful death actions,[3] where there

---

**2.** Whether these parents may recover has not been addressed by this court, although this court and numerous district courts within the Fifth Circuit have addressed similar issues. *See Skidmore v. Grueninger,* 506 F.2d 716, 729 n. 11 (5th Cir.1975) (this court allowed adult, nondependent *daughter* to recover for loss of her mother's society, noting that she was within class of beneficiaries under the Jones Act, DOHSA, and most state wrongful death acts); *Complaint of Metcalf,* 530 F.Supp. 446, 459–61 (S.D. Tex.1981) (nondependent mother could recover for loss of society for death of her adult unmarried son); *Palmer v. Ribax, Inc.,* 407 F.Supp. 974, 979 (M.D.Fla.1976) (nondependent parents could recover for loss of society with their nineteen-year-old, *unmarried* son).

The most analogous case is *Hamilton v. Canal Barge Co.,* 395 F.Supp. 978, 983–85 (E.D.La. 1975), where then District Court Judge Rubin held that parents not dependent on their son could recover for loss of his society even though he was survived by a child. *Hamilton,* 395 F.Supp. at 984, was properly based in large part on uniformity and special solicitude, the twin aims of admiralty. However, three years after

*Hamilton* the Supreme Court decided in *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978), that DOHSA provided the sole wrongful death cause of action for deaths occurring on the high seas to the exclusion of actions under *Moragne.* As discussed *infra,* any uniformity, and to a large extent the special solicitude, created by the holding in *Hamilton* was upset.

**3.** State wrongful death actions are considered only for guidance in shaping the general maritime cause of action for wrongful death under *Moragne.* This court held in *Matter of S/S Helena,* 529 F.2d 744, 753 (5th Cir.1976), that the general maritime action for wrongful death preempted state wrongful death statutes. Furthermore, in *Moragne,* 398 U.S. at 396–03, 90 S.Ct. at 1785–89, 26 L.Ed.2d at 354–58, the Court held that DOHSA, 46 U.S.C. § 767 (1982) ("provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter"), did not *prevent* the federal courts, exercising maritime jurisdiction, from creating a new cause of ac-

was no analogous maritime law. *See Moragne,* 398 U.S. at 388–93, 405–09, 90 S.Ct. at 1781–83, 1790–92, 26 L.Ed.2d at 349–52, 359–61; *Gaudet,* 414 U.S. at 577, 584–88, 94 S.Ct. at 811, 814–16, 39 L.Ed.2d at 16, 20–23.

Guided by the above principles, we hold that the parents in this case may not recover. First, denial of recovery lends more uniformity to admiralty jurisdiction than allowing recovery. The parents in this case could not have recovered for loss of society under other maritime remedies. DOHSA, 46 U.S.C. § 762 (1982), limits recovery to pecuniary losses, and the Jones Act, 46 U.S.C. § 688 (1982) (incorporating 45 U.S.C. § 51 (1982)), bars parents from recovering if the seaman is survived by spouse or child. *See also Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524, 529 (5th Cir.1979) (en banc) (survivors cannot recover for loss of society under Jones Act), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). *Cf. Smith v. Ithaca Corp.,* 612 F.2d 215, 226 (5th Cir.1980) (in territorial waters, cause of action for pecuniary damages under Jones Act for negligence does not exclude action for loss of society under *Moragne* for unseaworthiness). Therefore, maritime jurisdiction remains more uniform if the parents are not permitted to recover. If this court were to hold that the parents could recover for loss of society in this case, we would create vagaries in admiralty jurisdiction that *Moragne* was designed to destroy: first, where the death occurs in territorial waters, parents like those in this case could recover for loss of society on the basis of unseaworthiness under *Moragne* but not for negligence under the Jones Act, *see Smith,* 612 F.2d at 226; *Ivy,* 606 F.2d at 529; and second, and even more anomalous, parents similarly situated to those in this case would have a cause of action for loss of society if the death occurred in territorial waters but not if the death occurred on the high seas, *see* DOHSA, 46 U.S.C. § 762 (1982) (no recovery for nonpe-

cuniary damages); *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (DOHSA exclusive remedy for deaths occurring on the high seas).

In *Higginbotham,* 436 U.S. at 624 & n. 20, 98 S.Ct. at 2014 & n. 20, 56 L.Ed.2d 581 (1978), the Court hypothesized that its holding, that damages for loss of society could not be recovered for deaths occurring on the high seas even though such damages are recoverable when the death occurs in territorial waters, would not prove to be a significant threat to uniformity. The Court, however, was assuming that the damages for loss of society would be part of a recovery for pecuniary damages and would be symbolic and not a substantial portion of the survivor's recovery. *Id.* at 624 n. 20, 98 S.Ct. at 2014 n. 20, 56 L.Ed.2d at 587 n. 20. This case, however, presents the complete inverse of the scenario depicted by the Court's assumptions in *Higginbotham.* Here, the parents' sole cause of action is for loss of society and the damages awarded by the district court for loss of society cannot be characterized as symbolic. Therefore, we believe allowing the parents to recover for loss of society under these facts poses a significant threat to uniformity.

The parents argue that uniformity can best be accomplished by allowing the beneficiaries listed in DOHSA, 46 U.S.C. § 761 (1982), to sue for loss of society. The parents correctly point out that DOHSA is the sole congressional enactment dealing specifically and exclusively with wrongful death actions. *See Moragne,* 398 U.S. at 407, 90 S.Ct. at 1791, 26 L.Ed.2d at 360. If the court refers to the DOHSA beneficiaries to determine who may recover under *Moragne,* the parents argue, then the beneficiaries in maritime wrongful death actions would be uniform. According to the parents, that they cannot recover nonpecuniary losses under DOHSA is a separate issue that should not be considered in determining who may sue. We believe that

---

tion for deaths occurring in territorial waters independent from state wrongful death statutes. Accordingly, this court is not required to follow

the Louisiana wrongful death statute in giving substance to the cause of action created in *Moragne.*

the issue cannot be so split. To do so would impose superficial uniformity over substantive vagaries.

The second aim of maritime law, providing special solicitude to seamen, would not be furthered in any meaningful way by allowing the parents in this case to recover for loss of society. In *Gaudet,* 414 U.S. at 577, 94 S.Ct. at 811, 39 L.Ed.2d at 16, the Court stated that *Moragne* was designed to extend to the dependents of maritime wrongful death victims admiralty's special solicitude to seamen.[4] To the extent that the purpose of admiralty's special solicitude to the survivors of seamen is to provide for their financial support, the special solicitude aim of admiralty has no relevance in this case. The parents in this case were not dependent on their sons.

If a purpose of the solicitude is to provide the survivors peace of mind both before a seaman undertakes to venture upon hazardous and unpredictable sea voyages and after the death of the seaman, admiralty's special solicitude does not automatically mean that the parents in this case should recover. As stated above, the parents could not recover if the seamen's deaths occurred on the high seas or were the result of negligence but not of unseaworthiness. Admiralty cannot provide the par-

ents solicitude at a voyage's outset when their right to recover for loss of society is dependent on the fortuity that the deaths occur in territorial waters and are caused by unseaworthiness. Similarly, the parents have not explained why this court should extend to them special solicitude when, but for the happenstance that the seamen were killed in territorial waters and by unseaworthiness, Congress would have denied them recovery under DOHSA and the Jones Act.

In deciding this question, this court should also consider analogous maritime law, congressional enactments, and state wrongful death statutes. As Justice Harlan noted in *Moragne,* 398 U.S. at 406, 90 S.Ct. at 1791, 26 L.Ed.2d at 360, general maritime law, which until *Moragne* did not provide a cause of action for wrongful death, does not answer who are the proper beneficiaries entitled to recover under *Moragne.* Looking to congressional enactments, as we have noted, the parents have no claim under either DOHSA or the Jones Act. Similarly, the vast majority of states do not provide parents similarly situated to those in this case the right to recover for loss of society.[5]

In conclusion, we hold that in a general maritime wrongful death cause of action

---

**4.** That the Court used the word "dependents" in discussing the right to recover for loss of society, while lending support to our holding, is not dispositive. Chief Justice Marshall said:

> It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

*Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399–400, 5 L.Ed. 257, 398 (1821).

**5.** *See* Ala.Code §§ 6–5–410, 43–8–41, 43–8–42 (1982) (parents cannot recover if decedent survived by spouse and issue or by issue alone); Alaska Stat. § 09.55.580 (1984) (parents cannot recover if decedent survived by spouse or issue);

Ariz.Rev.Stat.Ann. § 12–612 (1982) (parents cannot recover if decedent survived by spouse or issue); Cal.Civ.Proc.Code § 376 (West Supp. 1985) (parents cannot recover if decedent survived by spouse and issue or by issue); Colo. Rev.Stat. §§ 13–21–201, 13–21–203 (1974) (nonpecuniary damages not recoverable and parents cannot recover if decedent survived by spouse or issue); Conn.Gen.Stat.Ann. § 52–555 (West Supp.1985) (no recovery for loss of society; damages measured by loss to decedent); Ga. Code Ann. §§ 74–108(c)(2), 105–1307 (1982 & Supp.1984) (parents cannot recover if decedent survived by spouse or issue); Hawaii Rev.Stat. § 663–3 (1976) (nondependent parents cannot recover); Idaho Code §§ 5–311, 15–2–102–103 (1979 & Supp.1985) (parents cannot recover if decedent survived by spouse and issue or by issue); Ill.Ann.Stat. ch. 70, § 2 (Smith-Hurd Supp.1985) (only pecuniary damages recoverable); Ind.Code Ann. § 34–1–1–2 (West Supp. 1985) (parents cannot recover if decedent survived by spouse or issue); Kan.Stat.Ann. §§ 60–1901–60–1905, 59–504 (1983) (parents cannot recover if decedent survived by spouse or issue); Ky.Rev.Stat. § 411.130 (Supp.1984) (parents

under *Moragne*, nondependent parents may not recover for loss of society where their deceased children were killed in territorial waters and are survived by spouse and/or child. The judgment of the district court is REVERSED.

cannot recover if decedent survived by spouse or issue); La.Civ.Code Ann. art. 2315 (West Supp.1985) (parents cannot recover if decedent survived by spouse or issue); Me.Rev.Stat.Ann. tit. 18–A, § 2–804 (West 1964) (parents cannot recover if decedent survived by spouse or issue); Mass.Gen.Laws Ann. ch. 229, §§ 1–2 (West 1985) (parents cannot recover if decedent survived by spouse or issue); Mich.Comp.Laws Ann. §§ 600.2922, 700.105 (West 1980 & Supp. 1985) (parents cannot recover if decedent survived by spouse and issue or by issue); Minn. Stat.Ann. § 573.02 (West Supp.1985) (only pecuniary damages recoverable); Miss.Code Ann. § 11–7–13 (Supp.1985) (parents cannot recover if decedent survived by spouse or issue); Nev. Rev.Stat. §§ 41.085, 134.040–.050 (1985) (parents cannot recover if decedent survived by spouse and issue or by issue); N.H.Rev.Stat. Ann. § 556:12 (1974) (no recovery for loss of society); N.J.Rev.Stat.Ann. § 2A: 31–5 (West Supp.1985) (only pecuniary damages recoverable); N.M.Stat.Ann. § 41–2–3 (1985) (parents cannot recover if decedent survived by spouse or issue); N.Y.Est. Powers & Trusts § 5–4.3 (McKinney Supp.1985) (only pecuniary damages recoverable); N.C.Gen.Stat. §§ 28A–18–2, 29–14, 29–15 (1984) (parents cannot recover if decedent survived by spouse and issue or by issue); N.D.Cent.Code §§ 32–21–04, 30.1–04–02, 30.1–04–03 (1976) (parents cannot recover if decedent survived by spouse and issue or by issue); 20 Pa.Cons.Stat.Ann. §§ 2102, 2103 (Purdon 1982 & Supp.1985), 42 Pa.Cons.Stat.Ann. § 8301 (Purdon 1982 & Supp.1985) (parents cannot recover if deceased survived by spouse and issue or by issue); R.I.Gen.Laws § 10–7–2 (Supp.1984) (parents can recover for loss of society only if deceased child is unemancipated minor); S.C.Code Ann. § 15–51–20 (Law. Co-op. 1977) (parents cannot recover if decedent survived by spouse or issue); S.D. Codified Laws Ann. § 21–5–7 (1978) (only pecuniary damages recoverable); Tenn.Code Ann. § 20–5–106 (1980) (only pecuniary damages recoverable); Vt.Stat.Ann. tit. 14, § 1492 (Supp.1985) (parents can recover for loss of society for only minor children); Va.Code § 8.01–53 (1984) (parents cannot recover if decedent survived by spouse or issue); Wash.Rev.Code Ann. § 4.20.020 (Supp.1985) (parents cannot recover if decedent survived by spouse or issue); W.Va.Code § 51–7–6 (Supp.1985) (parents cannot recover if decedent survived by spouse or issue).