United States Court of Appeals,

Fifth Circuit.

No. 91–3044.

David W. MURRAY, Individually and as Administrator of the Estates of his minor children Desiree Murray, David W. Murray, Jr., Darry Scott Murray, and Sally W. Murray, Plaintiffs–Appellants,

Sally W. Murray, Plaintiff–Appellant Cross–Appellee,

v.

ANTHONY J. BERTUCCI CONSTRUCTION COMPANY, INC., and Pacific Employers Insurance Company, Defendants–Appellees Cross–Appellants.

April 16, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before THORNBERRY, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This appeal asks us to consider, for the first time, whether the Supreme Court's decision in *Miles v. Apex Marine Corp.,* ––– U.S. ––––, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), bars the spouse of an injured seaman from recovering loss of society. Cross-appellants Anthony J. Bertucci Construction Company and Pacific Employers Insurance Company (collectively "Bertucci") contend that we should reverse the jury's award to Mrs. Murray for her loss of society in light of *Miles.* Because we conclude that *Miles,* properly extended, precludes an injured seaman's spouse from recovering loss of society, we vacate the jury's award to Mrs. Murray and remand. We also consider the Murrays' appeal of the district court's decision to strike the jury's award of loss of society to their children. We conclude, however, that the court did not err in striking the children's recovery and, therefore, affirm that decision.

I.

In 1987, David W. Murray suffered a serious back injury while working as a deckhand for Bertucci aboard the M/V BARBARA ANN in Louisiana territorial waters. Following the accident, Mr. Murray sued Bertucci for negligence under the Jones Act, 46 U.S.C.App. § 688, and for

unseaworthiness under the general maritime law. Mr. Murray later amended his suit to add claims on behalf of his wife and children for their loss of society.

On September 11, 1990, the jury found the M/V BARBARA ANN unseaworthy and Bertucci negligent and awarded Mr. Murray $662,000. The jury also awarded Mrs. Murray $175,000 and their children $37,500 each for past and future loss of society. The district court, however, granted Bertucci's motion to strike the children's claims. *See Murray v. Anthony J. Bertucci Construction Co.,* 745 F.Supp. 373 (E.D.La.1990). The court entered judgment in accordance with the jury's verdict and its ruling on the children's claims. After the court denied the parties' post-judgment motions, both sides filed timely appeals.

II.

For the first time on appeal, Bertucci challenges Mrs. Murray's right to recover for her loss of society in view of the Supreme Court's decision in *Miles.* Ordinarily, we do not consider issues that an appellant has not raised previously in the district court. *See generally* Steven Alan Childress and Martha S. Davis, *Standards of Review* § 6.3 (1st ed. 1986) (discussing court review of issues raised for the first time on appeal). This court has recognized, however, that "when a question is one of pure law, and when refusal to consider it will lead to an incorrect result or a miscarriage of justice, appellate courts are inclined to consider questions first raised on appeal." *Nilsen v. City of Moss Point, Mississippi,* 674 F.2d 379, 387 n. 13 (5th Cir.1982), *rev'd en banc on other grounds,* 701 F.2d 556 (5th Cir.1983). *See also Empire Life Ins. Co. of America v. Valdak Corp.,* 468 F.2d 330, 334 (5th Cir.1972). The Supreme Court has characterized the matter of what issues a court of appeals may consider for the first time on appeal as "one left primarily to the discreti on of the courts of appeals, to be exercised on the facts of the individual cases." *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

The particular circumstances in this case persuade us to consider the effect of *Miles* on Mrs.

Murray's right to recover, despite Bertucci's failure to present this question to the district court. Here, the Supreme Court decided *Miles* nearly two months after the jury returned its verdict and only one day before the district court entered judgment. *Cf. Hegger v. Green,* 646 F.2d 22 (2d Cir.1981) (reversing an award for loss of consortium because an intervening state court decision held that loss of consortium damages were not recoverable in wrongful death actions).

Moreover, at the time of the district court's decision, the Fifth Circuit recognized loss of society claims by spouses of seamen injured in territorial waters. *See Cruz v. Hendy Int'l Co.,* 638 F.2d 719 (5th Cir.1981). Any objection to Mrs. Murray's claim would have been in vain because the district court would have been obliged to overrule it in light of this court's clear authority in *Cruz.* As other circuits have recognized, this court should not require a party to object " "when it would not have produced any results in the trial court because a "solid wall of Circuit authority" then foreclosed the point.' " *Davis v. Mason County,* 927 F.2d 1473, 1481 (9th Cir.) (quoting *Robinson v. Heilman,* 563 F.2d 1304, 1307 (9th Cir.1977), *cert. denied,* —— U.S. ——, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991)).

In fact, even knowledge of the *Miles* appeal would not necessarily have given Bertucci the foresight to raise its objection earlier. The Supreme Court granted certiorari in *Miles* to consider the Fifth Circuit's decision to reaffirm its prior holding in *Sistrunk v. Circle Bar Drilling Co.,* 770 F.2d 455 (5th Cir.1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986). In *Sistrunk,* this court held that a *nondependent parent* could not recover for loss of society in a general maritime *wrongful death* action. *Murray,* on the other hand, involves an action for personal injuries, not wrongful death, and claims by a seaman's spouse and children.

Several other factors weigh heavily in favor of considering this question. First, the question of whether *Miles* extends to loss of society claims brought by spouses of injured seamen is a "pure question of law." We need not remand this question to the district court for the determination of any

factual issues because the facts here are not in dispute. Moreover, as we discuss below, we find that the proper resolution of this question in Bertucci's favor is beyond any doubt and a contrary decision would therefore constitute an injustice. *See Singleton,* 428 U.S. at 121, 96 S.Ct. at 2877; *Nilsen,* 674 F.2d at 387 n. 13.

Consideration of this question for the first time on appeal also does not present us with a situation where a party has not had an opportunity to argue his position. Both parties have addressed this question fully in their briefs to us and at oral argument. Mrs. Murray, therefore, has had a sufficient opportunity to develop and present her argument and would not be prejudiced if we consider this question. Finally, as the Second Circuit has observed, "[i]t is well settled that on direct review an appellate court must apply the law in effect at the time it renders its decision, unless doing so would cause manifest injustice." *Hegger,* 646 F.2d at 26 (citations omitted). *See also Empire Life Ins. Co.,* 468 F.2d at 334 ("Our duty is to enunciate the law on the record facts."). Having determined that Bertucci's cross-appeal is properly before us, we turn to the merits of Bertucci's argument.

## III.

In *Miles v. Apex Marine Corp.,* the Supreme Court addressed the question of whether a nondependent parent of a seaman who was killed by a fellow crew member could recover loss of society under the general maritime law. ——— U.S. ———, 111 S.Ct. 317, 112 L.Ed.2d 275, 283 (1990). The Court held first that the general maritime law recognizes a cause of action for the wrongful death of a seaman. *Id.* at ———, ———, 111 S.Ct. at 324, 328, 112 L.Ed.2d at 289, 293–94. The Court concluded, however, that this general maritime action for a seaman's wrongful death does not include recovery for loss of society. *Id.* at ———, ———, 111 S.Ct. at 326, 328, 112 L.Ed.2d at 291, 294.

The present appeal concerns the implications of this second holding. More particularly, cross-appellant Bertucci argues that the reasoning the Supreme Court used in *Miles* in precluding

recovery of nonpecuniary damages under the general maritime law in a wrongful death action also applies to a seaman's personal injury action. According to Bertucci, that same reasoning will bar the spouse of an *injured* seaman from recovering nonpecuniary losses, such as loss of society. The Murrays contend that *Miles* does not apply to an injury case and that we should uphold the jury's award of loss of society to Mrs. Murray under two earlier decisions, *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) and *Cruz v. Hendy Int'l Co.,* 638 F.2d 719 (5th Cir.1981). For the reasons that follow, we agree with Bertucci that *Miles* precludes Mrs. Murray's recovery for loss of society. To explain our conclusion, however, we must first consider how the Supreme Court arrived at its holding in *Miles.*

As the Supreme Court noted in *Miles,* the Court first addressed the scope of damages recoverable in a wrongful death action brought under the general maritime law in *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). The decedent in *Gaudet* was a longshoreman who was killed while working in state territorial waters.[1] In *Gaudet,* the Court held, *inter alia,* that a dependent plaintiff, the decedent's wife, could recover for her loss of society in a maritime wrongful death action.

Four years later, in *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), the Court considered the scope of recovery under the Death on the High Seas Act (DOHSA), 46 U.S.C.App. § 761 *et seq.* In declining to award loss of society damages to Higginbotham's widow, the Court limited its holding in *Gaudet* to deaths occurring in territorial waters. In *Higginbotham,* the Court concluded that, where the death occurred on the high seas, a dependent could not recover loss of society because the DOHSA specifically limited recoverable damages to pecuniary losses. The Court refused to supplement the DOHSA damages because Congress had specified the scope of damages in the act.

---

[1]As we will discuss in more detail later, unlike Gaudet, who was a longshoreman, the decedent in *Miles* and Mr. Murray, in today's case, were seamen.

Nevertheless, in *Alvez,* a plurality of the Supreme Court, relying on *Gaudet,* held that an *injured* harbor worker's wife could recover loss of society damages under the general maritime law. The Court concluded that "[w]ithin this single body of judge-formulated law [i.e., general maritime law], there is no apparent reason to differentiate between fatal and nonfatal injuries in authorizing recovery of damages for loss of society." *Alvez,* 446 U.S. at 281, 100 S.Ct. at 1677.

In *Cruz,* this court was faced with the spouse of an *injured* seaman seeking to recover loss of society damages under the general maritime law. We had to decide whether Cruz's occupation as a seaman required us to deny loss of society damages to his wife even though the harbor worker's wife in *Alvez* could recover those damages. We allowed the wife to recover loss of society. See *Cruz,* 638 F.2d at 725. We found "no more reason to distinguish between the types of workers whose rights stem from the same integral jurisprudence" than the *Alvez* court found to differentiate between degrees of injury. *Id.* at 724.

The Murrays rely on *Alvez* and *Cruz* and argue that *Miles* has not altered them. We disagree. First, *Miles* removed the judicial underpinning of *Alvez* and *Cruz,* on which the Murrays' argument rests. *Miles* specifically limited *Gaudet*—the starting point for *Alvez* and *Cruz*—to its facts. The Court found that the "holding of *Gaudet* applies only in territorial waters, and it applies only to longshoremen." *Miles,* ⎯⎯ U.S. at ⎯⎯, 111 S.Ct. at 325, 112 L.Ed.2d at 290. Consequently, *Miles* must have, at least implicitly, placed the same restriction on *Alvez* because that opinion merely extended *Gaudet* to personal injury actions. In fact, Justice Powell, who cast the deciding vote in *Alvez,* wrote that he "continue[d] to believe that [*Gaudet*] was decided wrongly, but [] recognize[d] the utility of stare decisis in cases of this kind." *Alvez,* 446 U.S. at 286, 100 S.Ct. at 1680 (Powell, J., concurring).

Moreover, our decision in *Cruz* relied on an expansive reading of both *Gaudet* and *Alvez* in holding that an injured seaman's spouse could recover for her loss of society. *Miles's* holding that

only survivors of longshoremen killed in territorial waters may recover nonpecuniary damages under *Gaudet* has foreclosed, however, such an expansive reading of these two opinions. Therefore, we find that *Miles* has so undercut *Cruz's* foundations as to overrule it or render its precedential value meaningless.

Second, *Miles* espoused a strong deference to Congress and federal maritime legislation. The Court declared that:

> We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress.

*Miles,* ⸺ U.S. at ⸺, 111 S.Ct. at 323, 112 L.Ed.2d at 287. We are required, therefore, to look to the Jones Act to consider the scope of the damage award for a seaman's injury.

In *Miles,* the Supreme Court considered the damage scheme Congress contemplated when it enacted the Jones Act. The Court recognized that while the Jones Act "evinces no general hostility to recovery under the maritime law," *id.* at ⸺, 111 S.Ct. at 324, 112 L.Ed.2d at 289, courts assume that "Congress is aware of existing law when it passes legislation." *Id.* at ⸺, 111 S.Ct. at 325, 112 L.Ed.2d at 291. When Congress enacted the Jones Act, spouses of seamen had no general maritime right to recover for loss of society in unseaworthiness claims. *Stretton v. Penrod Drilling Co.,* 701 F.2d 441, 444 (5th Cir.1983); *Christofferson v. Halliburton Co.,* 534 F.2d 1147, 1149 (5th Cir.1976), *overruled in part by Cruz,* 638 F.2d at 725; *Branton v. Lennard Pipelines,* 1991 A.M.C. 1514, 1991 WL 40263 (E.D.La.1991). Congress incorporated the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.,* unaltered into the Jones Act with this presumed knowledge that no remedy existed for loss of society or other nonpecuniary damages. *Miles* concluded that Congress thereby demonstrated its intent to incorporate the FELA's pecuniary limitation on wrongful death

damages into the Jones Act. *See Miles,* —— U.S. at ——, 111 S.Ct. at 325, 112 L.Ed.2d at 290–91. This reasoning applies with equal force to a seaman's claim for injuries. As a result, the Jones Act limits a seaman's recovery for injury to pecuniary losses and precludes any recovery for nonpecuniary losses, such as loss of society.

The Murrays ask us, therefore, to recognize damages that the general maritime law did not provide before the Jones Act's enactment and that the Jones Act itself did not sanction. We follow *Miles's* reasoning and decline, in this personal injury action, to upset the balance Congress has created in the Jones Act by allowing the recovery of damages Congress did not intend. "It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed in cases of [injury] resulting from negligence." *Id.* at ——, 111 S.Ct. at 325, 112 L.Ed.2d at 291.

The Murrays argue next that we should not read *Miles* as precluding a seaman injured in state waters from recovering nonpecuniary losses. The Murrays point out the anomaly of allowing the harbor worker injured in inland waters to recover nonpecuniary losses but barring the same recovery by the seaman injured at the same location.

We acknowledge the anomaly. This anomaly results, however, from the Supreme Court's decision in Miles to limit *Gaudet* to its facts. *Miles* makes it clear that the widow of a seaman cannot recover loss of society whether the death occurs in territorial waters or on the high seas. The same result must follow in injury cases. It would make no sense to conclude that Congress intended one damage scheme for injuries occurring to seamen in state waters and another on the high seas. The Supreme Court's emphasis in *Miles* on the importance of uniformity in remedies in maritime death cases must apply equally to injury actions.

If we recognize Mrs. Murray's loss of society claim, we would create the very sort of anomaly

*Miles* sought to avoid. Therefore, we follow the Supreme Court's lead in *Miles* and hold that the spouse of an injured seaman has no cause of action for loss of society under the general maritime law.[2]

## IV.

The Murrays also contend that the district court erred in striking their children's claims for loss of society. Having already determined that an injured seaman's spouse has no claim for loss of society, we find no reason to treat a seaman's children differently. As we discuss above, *Miles* emphasized the need to develop a uniform maritime law. It would be anomalous, indeed, to allow an injured seaman's children to recover for the nonpecuniary loss of society but to refuse such recovery to the seaman's spouse.[3] See *Robertson v. Arco Oil and Gas Co.,* 766 F.Supp. 535, 539 (W.D.La.1991) (holding that, in light of *Miles's* limitation of *Gaudet,* a dependent of a longshoreman injured on the outer continental shelf could not recover under the general maritime law for loss of society), *aff'd on other grounds,* 948 F.2d 132 (5th Cir.1991).

## V.

Finally, the Murrays argue that even if we conclude that *Miles* bars the recovery of Mrs. Murray and the children we should not apply *Miles* retroactively under the Supreme Court's test for retroactivity in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971). This court has recognized recently, however, that the Supreme Court's decision last term

---

[2]In reaching this conclusion, we observe that since *Miles* a number of district courts have considered the application of *Miles* to general maritime injury actions. Almost every court that has decided this question has held, as we do today, that *Miles* precludes recovery for loss of society. *See, e.g., Duplantis v. Texaco, Inc.,* 771 F.Supp. 787 (E.D.La.1991); *Dunbar v. American Commercial Barge Lines Co.,* 771 F.Supp. 151 (M.D.La.1991); *Branton,* 1991 A.M.C. 1514; *Breland v. Western Oceanic, Inc.,* 755 F.Supp. 718 (W.D.La.1991); *Anglada v. Tidewater, Inc.,* 752 F.Supp. 722 (E.D.La.1990). But see *Bourque v. Mallard Workover and Drilling, Inc.,* No. 89–1502 (W.D.La. July 9, 1991) (not extending *Miles*); *Rayborn v. Zapata Off–Shore Co.,* No. 90–0467 (W.D.La. May 2, 1991) (same).

[3]Even in the absence of *Miles,* we would not recognize the children's claims. *See DeLoach v. Companhia de Navegacao Lloyd Brasileiro,* 782 F.2d 438 (3d Cir.1986); *Madore v. Ingram Tank Ships, Inc.,* 732 F.2d 475 (5th Cir.1984).

in *James B. Beam Distilling Co. v. Georgia,* ––– U.S. ––––, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (*Jim Beam*), has significantly altered the retroactivity analysis. *See In re Luce,* ––– F.2d ––––, –––– No. 91–1069, slip op. at 3427 (5th Cir. Mar. 9, 1992); *Sterling v. Block,* 953 F.2d 198, 200 (5th Cir.1992). In *Jim Beam,* the Supreme Court held that "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Jim Beam,* 111 S.Ct. at 2448.

Thus, the threshold question we face in determining whether to give *Miles* retroactive effect is whether the Supreme Court applied the rule it enunciated in *Miles* to the parties in that case. *See Sterling,* at 200. This court observed in *Sterling* that:

> In order to conclude that the rule was applied to the original parties, the earlier opinion need not explicitly address the retroactivity issue. Where the court does not explicitly decide the retroactivity question or reserve the question of whether its holding applies to the parties before it, "it is properly understood to have followed the normal rule of retroactive application in civil cases."

*Id.* (quoting *Jim Beam,* 111 S.Ct. at 2445).

In *Miles,* as we discuss above, the Supreme Court held that the general maritime action for wrongful death of a seaman does not include recovery for loss of society. *Miles,* ––– U.S. at ––––, 111 S.Ct. at 328, 112 L.Ed.2d at 294. The Supreme Court, however, did not discuss the retroactivity of its decision or reserve that issue. Nevertheless, the Court affirmed the Fifth Circuit's denial of Mrs. Miles's recovery for loss of society. Consequently, we conclude that *Miles* "followed the normal rule of retroactive application in civil cases" and applied the new rule to the parties before it. *Jim Beam* dictates therefore that we apply Miles to the parties before us in this case.

For the above reasons, Mrs. Murray's award for loss of society should be stricken. The judgment of the district court is affirmed in all other respects. We remand this case to the district court for entry of judgment consistent with this opinion.

VACATED IN PART, AFFIRMED IN PART, AND REMANDED.