Verlon C. McKENZIE, et al., Plaintiffs,

v.

C & G BOAT WORKS, INC.,
et al., Defendants.

No. CIV.A. 02–0141–WS–C.

United States District Court,
S.D. Alabama,
Southern Division.

June 9, 2004.

Richard M. Martin, Jr., Eaves Law Firm, New Orleans, LA, for Plaintiffs.

Grover E. Asmus, II, P. Vincent Gaddy, Armbrecht Jackson LLP, Mobile, AL, for Defendants.

## ORDER

STEELE, District Judge.

This matter is before the Court on defendant C & G Boat Works, Inc.'s Objection to Recovery of Damages for Loss of Consortium/Loss of Society (doc. 177). Plaintiffs have submitted a Response (doc. 178) in opposition to that Objection, and the issue is now ripe for disposition.

### I. Background.

In previous orders, the Court has exhaustively recounted the factual and procedural posture of this case; therefore, the exercise will not be duplicated here. For purposes of the narrow issue raised by C & G, only a few critical facts need be noted. This action arises from injuries sustained by plaintiff Verlon C. McKenzie ("McKenzie") when he slipped and fell on a staircase covered with wet paint onboard the research vessel M/V BROOKS McCALL on March 9, 2000.[1] McKenzie's wife, Donna L. McKenzie ("Ms.McKenzie"), is also a named plaintiff in this ac-

---

1. Because McKenzie's status has a potential bearing on C & G's Objection, the Court observes that he was on the vessel as a diesel engine service representative, with responsibilities to inspect the engines and make any necessary adjustments during the sea trials planned for the day of the accident. (*See* McKenzie Dep. I, at 192, 195.) The key point is that at the time of the accident McKenzie was onboard the vessel in a professional capacity to perform work on the engines as needed during sea trials.

tion. Together, the McKenzies pursue causes of action against C & G for negligence, with such theory set forth alternatively under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b) ("LHWCA"), and general maritime law. (*See* Second Amended Complaint.) In the damages section of the Second Amended Complaint, Ms. McKenzie states that she seeks damages for past, present and future loss of her husband's society and services. (*Id.* at ¶ XXV.) In the joint proposed pretrial order (doc. 167) submitted by the parties on April 14, 2004, Ms. McKenzie claims $750,000 in damages for loss of consortium. (Proposed Pretrial Order, at 36.)

In a belated challenge interposed virtually on the eve of trial, C & G now seeks to bar Ms. McKenzie from recovering damages for loss of consortium.[2] C & G relies on a series of precedents from the Eleventh Circuit that it claims conclusively establish that this category of damages is unavailable in maritime law cases, as a matter of law. In response, Ms. McKenzie attempts to distinguish the Eleventh Circuit opinions cited by C & G, maintains that this case is governed by the Supreme Court's 1974 ruling in *Sea–Land Services, Inc. v. Gaudet,* and asserts that state-law remedies may supplement those permitted by general maritime law in accidents involving nonseamen in territorial waters.

## II. Analysis.

### A. The Eleventh Circuit Has Generally Barred Nonpecuniary Damages in Maritime Personal Injury Cases.

The Eleventh Circuit has issued several opinions that, on their face, would appear to bar recovery of loss of consortium damages in maritime law actions. For example, in *Lollie v. Brown Marine Service, Inc.,* 995 F.2d 1565 (11th Cir.1993), the court adopted the reasoning of two earlier Fifth Circuit cases, holding "that neither the Jones Act nor general maritime law authorizes recovery for loss of society or consortium in personal injury cases." *Id.* at 1565. Several years later, the court made an equally broad pronouncement regarding recovery of loss of consortium damages in personal injury cases under general maritime law:

> "Unless or until the United States Supreme Court should decide to add state remedies to the admiralty remedies for personal injury, **personal injury claimants have no claim for nonpecuniary damages such as loss of society, loss of consortium** or punitive damages."

*In re Amtrak "Sunset Ltd." Train Crash in Bayou Canot, Alabama, on Sept. 22, 1993,* 121 F.3d 1421, 1429 (11th Cir.1997) (emphasis added). Just last year, the Eleventh Circuit apparently reaffirmed these principles in *Tucker v. Fearn,* 333

---

**2.** C & G brought this issue to the Court's attention for the first time during the Final Pretrial Conference held on May 11, 2004, some six months after the dispositive motions deadline of November 5, 2003 had expired. C & G has not suggested that this objection was unavailable previously or that it is based on newly discovered information; rather, it appears that C & G had been aware of this legal objection for some time. Although the Court in its discretion will consider C & G's objection to the loss of consortium claim notwithstanding the dilatory manner in which it was raised, it would have been far more efficient—both for the litigants and this Court—for C & G to present the objection in the context of its summary judgment filing, rather than tarrying until the last possible moment. C & G should not assume that it may seek dismissal of causes of action or categories of damages claims at any time of its choosing, without regard to applicable scheduling orders. This Court takes announced pretrial deadlines seriously, and expects the same of litigants appearing before it.

F.3d 1216 (11th Cir.2003), wherein the court held that nondependent survivors of a nonseaman cannot recover loss of society damages in a wrongful death action under general maritime law. *Id.* at 1221–22. In reaching this conclusion, the *Tucker* panel explained that it would be "discordant" to authorize greater remedies for survivors in cases involving deaths of nonseamen in territorial waters than are allowed to survivors under the Death on the High Seas Act ("DOHSA") for deaths of nonseamen on the high seas, under the Jones Act for seamen, and under general maritime law for seamen. *Id.* at 1222.

### B. The Gaudet *Exception.*

Against this formidable and superficially impregnable wall of adverse authorities, Ms. McKenzie advances three arguments to preserve her loss of consortium remedy. First, she contends that *Lollie* and its ilk are distinguishable because they involve the death of seamen on the high seas in Jones Act or DOHSA claims, while this case by contrast concerns an *injury* to a *harbor worker* in *territorial waters.* (Response, at 1–2.) Second, Ms. McKenzie contends that her loss of consortium claims fall within the ambit of *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). (Response, at 3–4, 6.) Third, Ms. McKenzie claims that she is entitled to supplement remedies permitted by general maritime law with state-law remedies in cases arising from accidents involving nonseamen in territorial waters. (*Id.* at 5–6.)

The Court agrees with Ms. McKenzie's first two assertions; therefore, it need not reach the third. Considering those first two arguments in tandem, the appropriate starting place for the analysis is *Gaudet,*

wherein the Supreme Court permitted recovery of loss of society damages by the widow of a deceased longshoreman in a wrongful death action under general maritime law. 414 U.S. at 591, 94 S.Ct. 806. Significantly, *Gaudet* involved the death of a longshoreman in territorial waters.[3]

In 1990, the Supreme Court pruned back *Gaudet* to apply to only an exceedingly narrow band of cases. Specifically, in *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), the Court concluded that loss of society damages are not recoverable in actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law. 498 U.S. at 33, 111 S.Ct. 317. Nevertheless, *Miles* did not entirely slash and burn the legal landscape on this topic, but instead preserved a meager toehold for nonpecuniary damages in maritime cases by opining that "[t]he holding of *Gaudet* applies only in territorial waters, and it applies only to longshoremen." 498 U.S. at 31, 111 S.Ct. 317. Thus, the effect of *Miles* was *not* to overrule *Gaudet,* but rather to limit it to a tightly circumscribed class of cases involving (a) death or injury to longshoremen, in (b) territorial waters. Following *Miles,* federal appeals courts have consistently recognized that the *Gaudet* loss of society damages remain available in that particular category of lawsuits, even though they are unavailable in other contexts in general maritime law. *See, e.g., Randall v. Chevron U.S.A., Inc.,* 13 F.3d 888, 903 (5th Cir.1994) (deeming case squarely within ambit of surviving portion of *Gaudet* where longshoreman was killed in state territorial waters, and ruling that survivors were entitled to recover loss of society damages), *overruled on other*

---

**3.** Although *Gaudet* involved a situation where a longshoreman had been killed, the Supreme Court later extended *Gaudet* to cover situations where a longshoreman had sustained nonfatal injuries. *American Export Lines, Inc.*

*v. Alvez,* 446 U.S. 274, 281, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) (explaining that "there is no apparent reason to differentiate between fatal and nonfatal injuries in authorizing recovery of damages for loss of society").

grounds by *Bienvenu v. Texaco, Inc.*, 164 F.3d 901, 909 (5th Cir.1999); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1407 (9th Cir.1994) ("In cases involving longshoremen injured or killed on state territorial waters, however, beneficiaries can recover loss of society damages."); *Murray v. Anthony J. Bertucci Const. Co.*, 958 F.2d 127, 131 (5th Cir.1992) (construing *Miles* as meaning that "only survivors of longshoremen killed in territorial waters may recover nonpecuniary damages under *Gaudet* "); *see also Lucas v. Terral Riverservice, Inc.*, 2002 WL 1822934, *2 (E.D.La. Aug. 8, 2002) (noting that *Gaudet* has been limited in application "to longshoremen killed or injured in territorial waters"); *Friedman v. Cunard Line Ltd.*, 996 F.Supp. 303, 313 (S.D.N.Y.1998) (explaining that *Miles* limits *Gaudet* holding to a particular group of individuals).[4]

■ To be sure, the Eleventh Circuit has made blanket statements in *Lollie* and *Amtrak* suggesting that loss of society damages are *never* available in maritime cases. However, it would be incorrect to infer from those general propositions that the Eleventh Circuit regards *Gaudet* as having no further force or effect. Neither *Lollie* nor *Amtrak* involved injury to a longshoreman in territorial waters; therefore, the Eleventh Circuit panels in those cases had no occasion to consider the *Gaudet* rule or to factor same into their holdings. Lest there be any doubt that the Eleventh Circuit continues to ascribe to the *Gaudet* rule under the parameters set forth above, the court's analysis last year in *Tucker* alleviates all plausible question. In *Tucker*, the plaintiff was a nondependent survivor of a pleasure boater (*i.e.*, neither a seaman nor a longshoreman) killed in Alabama territorial waters. 333 F.3d at 1218. The plaintiff brought claims under both general maritime law and Alabama state law, only the former of which is relevant to this Court's consideration. *Id.* In support of his maritime law claims, Tucker relied heavily on *Gaudet*. The Eleventh Circuit rejected this contention, not by stating that *Gaudet* was no longer good law, but rather by emphasizing that, as limited by *Miles*, *Gaudet* applies only to longshoremen. *Id.* at 1223 (explaining that "the Supreme Court since has limited the applicability of *Gaudet* to its facts"). Inasmuch as the decedent clearly was not a longshoreman, the *Tucker* court found that *Gaudet* could not save the plaintiff's loss of consortium claims under general maritime law. *Id.* Under *Tucker*, then, the Eleventh Circuit plainly recognizes the continued vitality of *Gaudet* in the class of circumstances left intact by the Supreme Court's decision in *Miles*. For that reason, the expansive pronouncements of *Lollie* and *Amtrak* regarding availability of loss of consortium damages may be true as general propositions, but they cannot reasonably be construed as holding in all circumstances. Rather, the *Gaudet* exception remains viable today. Where that exception applies, loss of consortium damages remain available to dependent spouses in maritime actions, notwithstanding the sweeping language of *Lollie* and *Amtrak*.

■ Accordingly, Ms. McKenzie's loss of consortium damages stand or fall on the basis of the applicability of *Gaudet*. As

---

4. It has also been recognized that the effect of *Miles* on *Alvez* was analogous to its impact on *Gaudet*. *See Murray v. Anthony J. Bertucci Const. Co.*, 958 F.2d 127, 130 (5th Cir.1992) (reasoning that "*Miles* must have, at least implicitly, placed the same restriction on *Alvez* because that opinion merely extended *Gaudet* to personal injury actions"). For purposes of simplicity, this Order will speak in terms of "the *Gaudet* rule" and the like; however, it should be understood that the Court is relying on both *Alvez* and *Gaudet*, inasmuch as *Alvez* extended *Gaudet* to circumstances where a longshoreman was merely injured, not killed, but in all other material respects adhered to the principles outlined in *Gaudet*.

mentioned *supra, Gaudet* (as restricted by *Miles* ) authorizes recovery of loss of consortium damages in cases involving injury or death to longshoremen in territorial waters. Here, C & G has not argued that the M/V BROOKS McCALL was not in territorial waters at the time of McKenzie's slip and fall, nor could it reasonably do so based on the record before the Court. Furthermore, C & G has not suggested that McKenzie does not qualify as a "longshoreman" within the meaning of *Gaudet.* Authorities demonstrate that McKenzie, an engine service mechanic onboard the vessel for the purpose of monitoring and adjusting the vessel's engines during sea trials, is properly classified as a longshoreman. *See, e.g.,* 33 U.S.C. § 902(3) (providing that "employee" for purposes of Longshore and Harbor Workers' Compensation Act includes "any person engaged in maritime employment, including . . . any harbor-worker including a ship repairman, shipbuilder, and shipbreaker"); Schoenbaum, *Admiralty and Maritime Law* (4th ed.), § 7–1 (defining longshoremen as "land-based workers who perform a variety of tasks for, on, and around vessels"). C & G has not contested McKenzie's status as a "longshoreman" for purposes of applying *Gaudet,* and the Court's independent review reveals that he is properly deemed as such.

Because McKenzie sustained injuries as a longshoreman in territorial waters, the Court finds that this action falls squarely within that narrow band of cases for which loss of society/loss of consortium damages are authorized by the intersection of *Gaudet* and *Miles.*[5] *See Randall,* 13 F.3d at 903 (holding that survivors of longshoreman killed in territorial waters may recover loss of society damages under general maritime law pursuant to *Gaudet* rule).

### III. Conclusion.

For all of the foregoing reasons, it is the opinion of this Court that Ms. McKenzie's loss of consortium damages claims under general maritime law are not foreclosed as a matter of law. Because McKenzie was a longshoreman injured in territorial waters, the surviving portions of *Gaudet* and *Alvez* specifically authorize the recovery of loss of consortium damages under general maritime law. Accordingly, C & G's objection to Ms. McKenzie's loss of consortium damages claims is overruled, and Ms. McKenzie will be permitted to present evidence in support of those damages claims at trial in furtherance of plaintiffs' negligence claims under general maritime law.

**5.** In so ruling, the Court recognizes the anomalous result created by allowing spouses of harbor workers injured in territorial workers to secure greater remedies than, for example, spouses of seamen injured or killed on the high seas or in territorial waters. The Court further recognizes that the Supreme Court in *Miles* championed the goal of developing a "uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOSHA, the Jones Act, or general maritime law." 498 U.S. at 32, 111 S.Ct. 317. While this result may conflict with the uniformity principles advanced by *Miles,* the Court's conclusion is mandated by the sliver of *Gaudet* left undisturbed by the *Miles* holding. *See generally Tucker,* 333 F.3d at 1222 (explaining discord wrought by permitting additional remedies for pleasure boater in territorial waters than are allowed for seamen). Unless and until the remaining vestiges of *Gaudet* are overruled (which the Supreme Court could have done, but chose not to do, in *Miles* ), this scheme of disparate remedies will persist, as spouses of injured longshoremen in territorial waters are afforded greater remedies than spouses of injured seamen (or nonseamen who are not longshoremen, such as the decedent in *Tucker* ).